# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 14-cr-467-3 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| DEBRA A. SCHULTZ ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Debra Schultz's motion for acquittal and new trial [154] and her motion for leave to file a brief in excess of fifteen pages [153]. For the reasons set forth below, the Court grants Defendant's request to file a longer brief [153], but denies Defendant's motion for acquittal and new trial [154].

**I.  Background**

Defendant Debra Schultz was charged with three counts of wire fraud, 18 U.S.C. § 1343, in connection with a scheme to defraud a non-profit organization that coordinated organ and tissue donations in Illinois and Indiana ("Organization A"). Two other defendants were charged alongside Defendant, one of whom was her cousin, co-Defendant Shari Hansen. Hansen was the non-profit's auditing coordinator and created false organ donation invoices to siphon money from her employer. Some of the invoices and checks were made out to Defendant's minor son and identified him as the doctor performing the non-existent procedure. Dozens of checks were deposited into bank accounts controlled by Defendant. Hansen maintains that Defendant kept some of this money for herself, and Defendant maintains that she did not. Ultimately, Hansen pled guilty, cooperated with the Government, and testified against Defendant at trial.

Trial commenced on January 9, 2017. After a six-day trial, the jury returned a guilty verdict on all three counts. Defendant has now moved for acquittal and a new trial [154].

## II. Legal Standard

Under Federal Rule of Criminal Procedure 29(a), a defendant may move for entry of a judgment of acquittal on "any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). A "Rule 29 judgment of acquittal is a substantive determination that the prosecution has failed to carry its burden." *Smith v. Massachusetts*, 543 U.S. 462, 468 (2005). The Court must "construe the evidence in the light most favorable to the government, asking whether a rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *United States v. Weimert*, 819 F.3d 351, 354 (7th Cir. 2016). To prevail on a sufficiency of evidence challenge, Defendant "must show that no rational trier of fact could have found that the government proved the essential elements of the crime beyond a reasonable doubt." *United States v. Griffin*, 684 F.3d 691, 694 (7th Cir. 2012).

Under Federal Rule of Criminal Procedure 33, a "court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994) (internal quotation marks omitted). The rule is "reserved for only the most extreme cases." *United States v. Hagler*, 700 F.3d 1091, 1101 (7th Cir. 2012) (quoting *United States v. Linwood,* 142 F.3d 418, 422 (7th Cir. 1998)). "[C]ourts have interpreted the rule to require a new trial 'in the interests of justice' in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989).

## III. Analysis

Defendant seeks a judgment of acquittal or new trial for three reasons: (1) Defendant's Fifth Amendment rights were violated when the Court instructed the jury—consistent with the

2

Seventh Circuit's pattern jury instructions—that the wire fraud statute can be violated without gain to Defendant; (2) there was insufficient evidence to convict Defendant of wire fraud based on Hansen's testimony; and (3) the Court erred in excluding certain text messages. The Court takes each argument in turn.

A. **"No Gain" Jury Instruction**

Before the final jury instruction conference, Defendant indicated that she would be objecting to the Government's proposed jury instructions on the basis of *Stirone v. United States*, 361 U.S. 212 (1960). The Court asked Defendant to brief her objection, and she submitted a short, half-page argument that largely summarized *Stirone* and *United States v. Miller*, 471 U.S. 130 (1985). [See 129, at 2.] When it came to applying those two cases, Defendant framed her argument this way:

> By allowing a finding of guilty without any gain established, the indictment is amended beyond its scope. The grand jury was introduced evidence that there was $114,000 provided to the defendant as a result of the scheme and the indictment was handed down on the basis of gain. To allow a conviction based on an instruction with no gain required, the indictment's scope is expanded.

*Id.*

The Court overruled that objection, providing at least eight reasons for doing so: (1) the indictment merely included the open-ended statement that Defendant and her two co-Defendants "fraudulently converted to their own benefit the funds obtained from" Organization A, which was consistent with the proof at trial; (2) Defendant failed to submit any evidence of what the grand jury was told; (3) regardless, the terms of the indictment, not grand jury testimony, are what can be constructively amended; (4) gain is not an element of wire fraud, and allegations that are unnecessary to the elements of the offense can be dropped from the indictment without causing a constructive amendment under *Miller*; (5) withdrawing proof of personal gain narrows rather than broadens the indictment, which is permissible under *Miller*; (6) Defendant had notice

3

of the charge from the indictment; (7) reference to "benefit" in the indictment was, at best, surplusage and could not increase the elements that the government was required to prove at trial; and (8) Defendant's proposed remedy (striking Government's proposed "aiding and abetting" instruction) did not match any alleged *Stirone* violation. [132, at 3–6.] The jury was ultimately given the Seventh Circuit's pattern instruction that success is not required to prove wire fraud. See Pattern Criminal Jury Instructions of the Seventh Circuit for 18 U.S.C. §§ 1341 & 1343 at 442 (2012); [134, at 26 ("The wire fraud statute can be violated whether or not there is any loss or damage to the victim of the crime or gain to the defendant.")].

Defendant argues that this was error, and attempts to respond to some of the Court's reasons over the first twenty pages of her post-trial brief.[1] Overall, she makes three main arguments. First, the Government "broadened" the indictment because the "theory" it submitted to the grand jury was that Defendant converted funds for personal gain, while the "theory" it presented at trial was one of "no gain." [154, at 4–5.] This was an "alternative theory of the case," and the grand jury was required to charge both theories—gain and no gain—if the Government was to present a theory of "no gain" at trial. *Id.* at 5. Because the "no gain" theory was not presented to the grand jury, the Government violated *Stirone* and a new trial is needed. Second, grand jury testimony is "very relevant" to establishing a constructive amendment. *Id.* at 15–17. Third, "it does not matter if gain is not an element of the offense" of wire fraud because

---

[1] Northern District of Illinois Local Rule 7.1 provides that briefs are limited to 15 pages absent leave of the Court. L.R. 7.1. A brief that is longer than 15 pages must have a table of contents and table of cases. *Id.* Defendant, who is represented by counsel, requested to file a brief in excess of typical limit [153], and submitted a 62-page opening brief without either table. Defendant offers no justification for submitting a brief over four times the ordinary limit beyond stating that this was a "lengthy trial, [with] complex legal issues, and complex facts." In fact, this was a six-day trial involving a handful of witnesses and single crime—wire fraud. Moreover, the Court previously issued written rulings on two of three issues raised by Defendant in her motion. Nevertheless, the Government did not oppose this motion, and for that reason, Defendant's request [153] is granted.

4

"[t]he government charged it that way" and thus is precluded from securing the Seventh Circuit's pattern instruction on this subject. *Id.* at 17–21.[2]

These arguments reflect a fundamental misunderstanding of the constructive amendment doctrine. It is not about "factual theories." It is about elements. "The general rule in this area is that the trial court cannot amend the indictment at the instruction stage by eliminating or changing an essential or material *element* of the crime." *United States v. Williams*, 798 F.2d 1024, 1033 (7th Cir. 1986) (emphasis added). "An 'essential' or 'material' element of a crime is one whose specification with precise accuracy is necessary to establish the very illegality of the behavior and thus the court's jurisdiction." *United States v. Cina*, 699 F.2d 853, 859 (7th Cir. 1983). "Indictments often contain superfluous background information that is not essential to the elements of the charge." *United States v. Swanson*, 394 F.3d 520, 525 (7th Cir. 2005). "Allegations in an indictment that are not essential to prove the crime charged are mere surplusage and need not be proved nor addressed in instructions to the jury." *Id.* at 525–26; see also *Miller*, 471 U.S. at 136 ("A part of the indictment unnecessary to and independent of the allegations of the offense proved may normally be treated as 'a useless averment' that 'may be ignored.'" (citation omitted)). Thus, to raise the prospect of a constructive amendment, the government at trial must try to prove an essential or material element of the crime in a meaningfully different way than the manner set out in the indictment. Defendant does not cite a single case to the contrary.

Defendant's argument that "[t]he basis for reversal in *Stirone* has nothing to do with the elements of the crime" but was "based on the factual theories presented" misreads *Stirone*. [154,

---

[2] These arguments subtly differ from Defendant's original submission. The word "theory," which appears more than sixty times in Defendant's post-trial brief, is entirely absent from her prior filing. Her original argument was that the proof at trial had constructively amended the grand jury testimony, while she now argues that grand jury testimony is merely "relevant." Defendant also drops her argument that the alleged *Stirone* violation is cured by omitting the aiding and abetting instruction.

at 18.]³ *Stirone* rests on the fact that the Hobbs Act, 18 U.S.C. § 1951, has "two essential elements": "interference with commerce, and extortion." *Stirone*, 361 U.S. at 218. "Both elements have to be charged. Neither is surplusage and neither can be treated as surplusage." *Id.* The indictment in *Stirone* charged the defendant with interfering with commerce by interfering with the importation of sand. *Id.* at 213–14. At trial, the government sought to prove that the defendant interfered with commerce by interfering with the future exportation of steel. *Id.* at 214–15. Thus, a constructive amendment occurred when the government fundamentally changed how it would prove the "interference with commerce" element at trial. *Id.* at 215–16. The Supreme Court further explained, "when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened." *Id.* at 218. In other words, even

---

³ It also ignores decades of Seventh Circuit precedent. See *United States v. Tello*, 687 F.3d 785, 794 (7th Cir. 2012) ("[I]t is only a divergence between allegations and proof as to those [essential] elements that will result in a constructive amendment of the charge."); *United States v. Mitov*, 460 F.3d 901, 906 (7th Cir. 2006) ("For a change in the indictment to rise to the level of a constructive amendment, it must establish an offense different from, or in addition to, those originally charged. As such, we are primarily concerned with changes made to the indictment that affect elements of the crime." (citation omitted)); *United States v. Alhalabi*, 443 F.3d 605, 613 (7th Cir. 2006) ("An amendment or change to an indictment will be 'allowed to stand if it does not change an 'essential' or 'material' element of the charge so as to cause prejudice to the defendant.' A material element of the crime is one whose specification with precise accuracy is necessary to establish the illegality of the behavior and the court's jurisdiction." (citation omitted)); *United States v. Krilich*, 159 F.3d 1020, 1027 (7th Cir. 1998) ("Cases * * * like *Stirone* itself, involved the substitution of one criminal offense for another; a change of dates does not (the date of a crime is not an element of the offense)."); *United States v. Spaeni*, 60 F.3d 313, 315 (7th Cir. 1995) ("In fact, we consistently have allowed a variance or amendment to an indictment when it does not change an 'essential' or 'material' element of the charge and does not prejudice the defendant."); *United States v. Quintanilla*, 2 F.3d 1469, 1475–76 (7th Cir. 1993) ("A firearm (any firearm will do) is an essential element of the firearm statute, 18 U.S.C. § 924(c); as noted, however, a scheme to defraud is not essential to the crime of transporting checks taken by fraud in interstate commerce. The deletion of the reference to Count Four's scheme to defraud * * * thus cannot be said to have broadened the basis of [defendant's] liability on those counts."); *Cina*, 699 F.2d at 857 ("In general, either an amendment or a variance will be allowed to stand if it does not change an 'essential' or 'material' element of the charge so as to cause prejudice to the defendant."); *United States v. Kramer*, 711 F.2d 789, 796 (7th Cir. 1983) ("The rule applies only when the fact in question is a material element of the offense charged").

though an indictment stating in general terms how the defendant interfered with commerce would have been sufficient, the government could not materially change how it planned to prove this element once the indictment specified precisely how this element was satisfied. Nothing about that language requires "factual theories" from an indictment that are *unrelated* to the particular elements of a crime to form the basis of a constructive amendment.[4]

Indeed, the Seventh Circuit has reached this result time and time again. For example, in *Tello*, the Seventh Circuit rejected that there was a constructive amendment of the RICO conspiracy alleged in the defendant's indictment. 687 F.3d at 794–76. The Court explained that "any allegation as to overt acts, including predicate acts of racketeering, that [defendant] may have committed in furtherance of the charged conspiracy, would constitute surplusage rather than an essential element of the charged conspiracy." *Id.* at 796. "Such surplus allegations thus would not support a later charge of constructive amendment based on a divergence between the acts alleged in the indictment and the acts, if any, acknowledged in the guilty plea." *Id.*

In *Franco*, the district court instructed the jury that the government was not obligated to prove the specific acts referenced in the indictment in determining whether the defendant conspired to possess with intent and distribute marijuana. 874 F.2d at 1142–43. The Seventh Circuit affirmed, finding no constructive amendment, because "the government is not required to allege or prove an overt act in furtherance of the conspiracy" and "the district court [need not] instruct the jury concerning the extra paragraphs in an indictment that describe the objects and

---

[4] Defendant emphasizes that the word "theory" appears in *Miller* [154, at 6], but glosses over the context. *Miller* states, "[Defendant's] indictment properly alleged violations of 18 U.S.C. § 1341, and it fully and clearly set forth a number of ways in which the acts alleged constituted violations. The facts proved at trial clearly conformed to one of the theories of the offense contained within that indictment, for the indictment gave [defendant] clear notice that he would have to defend against an allegation that he 'well knew that the amount of copper claimed to have been taken during the alleged burglary was grossly inflated for the purpose of fraudulently obtaining $150,000 from Aetna Insurance Company.'" 471 U.S. at 134. Thus, the "theory" referenced by in *Miller* is the specific way that the defendant committed fraud, which is directly tied to the particular elements that must be proven under 18 U.S.C. § 1341.

activities of the conspiracy." *Id.* at 1144. Much like the instant case, the Seventh Circuit noted that the defendant "fails to provide any authority to support his claim that unessential allegations contained in the count must be proven beyond a reasonable doubt." *Id.* Because the particular acts referenced in "paragraphs numbered two through ten in his indictment were not essential elements of the charge * * * the district court was correct in refusing to instruct the jury that the government must prove the allegations in paragraphs two through ten." *Id.*; see also *Williams*, 798 F.2d at 1032–33 (finding no constructive amendment where jury instructions did not require the government to prove the specific roles of conspirators and overt acts committed in furtherance of charged conspiracy set forth in seven paragraphs of the indictment because those allegations were not "essential elements" to the conspiracy charge).

Defendant's motion cites three cases that she claims support a constructive amendment argument [154, at 11–13], but all three actually undermine her contention that "factual theories," not elements, are what matters. In *United States v. Ramirez*, 182 F.3d 544 (7th Cir. 1999), the indictment charged the defendant with knowingly carrying a firearm in relation to "a drug trafficking crime, *being the knowing and intentional unlawful distribution of marijuana*" in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. §§ 924(c)(1) and 2(a). *Id.* at 547. At trial, the government attempted to change the drug charge to be possession (not distribution) of marijuana. The Court found that "a particular drug trafficking offense rendered the specified predicate offense an *essential element* of the 924(c) charge." *Id.* (emphasis added). Because the proof at trial regarding this predicate offense differed from this "element" in the indictment, there was a constructive amendment on the firearm charge. *Id.* at 548.

The same scenario was present in *United States v. Willoughby*, 27 F.3d 263 (7th Cir. 1994). The indictment charged defendant with the use of a firearm "during and in relation to a

8

drug trafficking crime, *to wit: the distribution of cocaine*." *Id.* at 266. Because the indictment used the phrase "to wit," it made "what follows an essential part of the charged offense." *Id.* Because the indictment limited the particular predicate drug offense for the firearm conviction to cocaine distribution, proof at trial of cocaine possession was a constructive amendment.

Furthermore, in *United States v. Pigee*, 197 F.3d 879 (7th Cir. 1999), the Seventh Circuit rejected one constructive amendment argument, but accepted another. The defendant was charged with maintaining a "place" for purposes of distributing cocaine (Count 6) and making a building she owned available for storing cocaine (Count 7). The Seventh Circuit upheld Count 6 even though the jury instructions included a reference to a "residence" (not a "place") and added "manufacturing" to the charge because this was "benign supplemental verbiage." *Id.* at 887. The Seventh Circuit found that Count 7 had been constructively amended, however, because the instructions added "manufacturing, distributing, [and] using" to the possible ways that the defendant could be convicted—all of which are distinct ways to violate to violate 21 U.S.C.§ 856 specified in the statute itself. *Id.* Thus, the government did not change a factual theory unrelated to the elements; it changed the how the elements of 21 U.S.C. § 856 were proven.

Here, Defendant concedes that gain is not an element of wire fraud. [154, at 20; 156, at 2.] While she also asserts that the indictment's allegation regarding gain is not "mere surplusage" [154, at 20], she does not explain how gain "is necessary to establish the very illegality" for which she was charged. *Cina*, 699 F.2d at 859. Without dispute, her altruism or self-interest is not. See, *e.g.*, *United States v. Spano*, 421 F.3d 599, 603 (7th Cir. 2005) ("A participant in a scheme to defraud is guilty even if [s]he is an altruist and all the benefits of the fraud accrue to other participants."). In other words, wire fraud does not depend on proof of the defendant's motives any more than a drug conspiracy in violation of 21 U.S.C. § 846 depends on

9

proof of an overt act. Neither is "essential" or "material" to the offense. If gain is not essential to wire fraud, then it is surplusage. See *Swanson*, 394 F.3d at 525. If it is surplusage, then the Government does not need to prove gain beyond a reasonable to sustain a wire fraud conviction.[5] If the Government does not need to prove gain, then there is no constitutional error in telling the jury this fact. [134, at 26.] Defendant does not cite any case holding that an indictment that offers a reason why a defendant committed wire fraud requires the government to prove that fact beyond a reasonable doubt. Because gain is not necessary or dependent on the elements of wire fraud, it can "be treated as 'a useless averment' that 'may be ignored.'" *Miller*, 471 U.S. at 136.

But all of this is only *one* problem with Defendant's argument. This is not a case where a "'complex set of facts' [was] presented to the jury which was distinctively different from those set forth in the charging instrument." *United States v. Muelbl*, 739 F.2d 1175, 1181 (7th Cir. 1984). The text of Defendant's indictment reads, "It was further part of the scheme that defendants [Hansen], [other co-Defendant], and [Defendant] fraudulently converted to their benefit the funds obtained from Organization A." [1, ¶ 9.][6] That is precisely the "theory" that the Government presented at trial. The Government presented multiple days of testimony regarding how the money traveled between Defendant and Hansen's bank accounts, and the jury heard testimony from the Government's witness that Defendant kept up to $11,000. It is equally the case, however, that neither this testimony nor the charge itself transformed "gain" into an element that the Government was required to prove beyond a reasonable doubt. See, *e.g.*, *United States v. LaBudda*, 882 F.2d 244, 249 (7th Cir. 1989) (rejecting the argument "that the

---

[5] The flip side of accepting Defendant's argument is that if the Government had included in the charge that Defendant did not receive any money in connection with the fraud, the Government would have had to prove her *lack of gain* beyond a reasonable doubt. Defendant cites nothing to suggest that is the law.

[6] It is worth noting that Defendant's entire constructive amendment argument is predicated on construing the phrase "their benefit" in the indictment to mean "each Defendant's personal monetary gain." The indictment itself is framed collectively and does not specify what "benefit" means.

government had to prove the bonds were actually stolen because that is what the government alleges as part of the conspiracy in the indictment" because "language contained in an indictment that goes beyond alleging the elements of the offense is mere surplusage, and the government does not have to prove this surplusage at trial"); *United States v. Greene*, 497 F.2d 1068, 1086 (7th Cir. 1974) (rejecting Defendant's argument that "the Government was required to prove specific intent not because the statute demands it but because the indictment refers to specific intent" as "without merit" because "[t]he language of the indictment, insofar as it goes beyond alleging the elements of the statute, is mere surplusage").

Likewise, the Court remains unpersuaded that the Seventh Circuit's pattern instruction broadened the indictment.[7] Even accepting the thrust of Defendant's argument, the grand jury indicted Defendant because it found that the Government could prove all four elements of wire fraud *plus* Defendant's personal monetary gain. If the grand jury believed there was probable cause for all five elements/facts, then it logically believed there was probable cause for each element/fact individually. See *United States v. Muelbl*, 739 F.2d 1175, 1181 (7th Cir. 1984) ("[W]hen the grand jury indicted the defendant for conspiracy to violate federal drug laws with regard to these three drugs, * * * it also charged a conspiracy to distribute and possess with intent to distribute each of these drugs individually"). That means the grand jury believed there

---

[7] Any belated claim that Defendant could not anticipate from the indictment what evidence would be presented against her based on this instruction is without merit. The Government filed this proposed jury instruction nearly eight months before trial. [59, at 29.] Defendant does not identify a single piece of evidence that she could not anticipate or explain how she could be genuinely surprised that, consistent with black letter law, the Government would be arguing that "gain" was not an element of wire fraud. Simply because the evidence at trial showed that Defendant likely kept less money from this scheme than the grand jury was told does not expose her to double jeopardy or deprive her of fair notice. See *United States v. Ratliff-White*, 493 F.3d 812, 819 (7th Cir. 2007). Nor does specific grand jury testimony preclude the Government from presenting evidence at trial that Defendant retained less money. Defendant still does not provide any case law establishing that grand jury testimony alone—separate and apart from the terms of an indictment—can trigger a constructive amendment. None of Defendant's block quotes from *Stirone* [154, at 15–16; 156, at 3–5] have anything to do with grand jury testimony, rather than the terms of the indictment itself.

11

was probable cause for the four elements of wire fraud on their own *without* gain—or, in Defendant's terms "no gain."  See *id.* ("It simply defies logic to assert that the grand jury did not find a conspiracy to distribute with respect to each of the drugs individually, but rather found only a conspiracy to distribute all of the drugs collectively.").  In any event, subtracting "gain" from this set of elements/facts reduces the number of issues for the jury to decide.  See *Quintanilla*, 2 F.3d at 1475–76.  It "narrows" the indictment.  *Miller*, 471 U.S. at 138.

Defendant fails to distinguish this case from *Miller*.  Defendant contends that "*Miller* does not apply in the instant case is because *Miller* charged two theories, either of which could sustain the elements of the conviction.  In essence, *Miller* charged the gain and no gain alternatives."  [154, at 5.]  While that is true of *Miller*, Defendant glosses over the fact that the reason why "gain and no gain" can both "sustain" a wire fraud conviction is that neither are elements of wire fraud nor delineate the way in which the Government proves any element of wire fraud.  Said differently, gain is not necessary to the offense. As the Supreme Court held in *Miller*, "[t]o the extent [*Ex Parte*] *Bain* stands for the proposition that it constitutes an unconstitutional amendment to drop from an indictment those allegations that are unnecessary to an offense that is clearly contained within it, that case has simply not survived.  To avoid further confusion, we now explicitly reject that proposition."  471 U.S. at 144.  Just because Defendant's "indictment charged more than was necessary" does not mean that she was not "tried on an indictment that clearly set out the offense for which [s]he was ultimately convicted."  *Id.* at 140. There was no constructive amendment, and this basis for a new trial or acquittal is denied.

### B.     Sufficiency of the Evidence

Defendant's argument that the Government failed to meet its burden at trial is based on one simple premise:  Hansen is a liar.  Defendant contends that she "can and will prove, using Hansen's (and [the Government's summary expert's]) own words, beyond a reasonable doubt

12

that everything Shari Hansen said regarding Debra Schultz's knowledge to be false and unreliable." [154, at 21.] Defendant proceeds to collect what she contends are Hansen's "actual lies" and other statements "that can be directly impeached with irrefutable evidence." *Id.* at 22. She then lists eight "group[s] of lies" that Hansen told, many of which are simply variations on the same statements about how much money Defendant kept from each fraudulent check as part of the scheme. *Id.* at 22–54. Defendant maintains that Hansen's testimony "is not even remotely believable," involved "an unequivocal lie," was "proven false by the evidence," was "unequivocally impeached," and was impeached by her plea agreement. *Id.* at 23, 25, 32, 46, 49–51. Defendant concludes by stating, "There is not one material fact that Hansen testified to that is not tainted with lies. Everything material is a lie. Why the need for so many lies? These aren't merely negative inferences, these are unequivocal lies." *Id.* at 154.

There are two main problems with this argument. First, "attacks on witness credibility are insufficient to sustain a challenge to the sufficiency of the evidence." *United States v. Griffin*, 84 F.3d 912, 927 (7th Cir. 1996). "Credibility determinations * * * are within the province of the jury, and we will not reverse them just because the credited testimony comes from confessed law-breakers or known liars." *United States v. Algee*, 309 F.3d 1011, 1016 (7th Cir. 2002); accord *United States v. Rollins*, 544 F.3d 820, 835 (7th Cir. 2008) ("It is up to the jury to weigh the evidence and determine the credibility of the witnesses; we do not second-guess the jury's assessment of the evidence."). Thus, proving that Hansen was a lying liar who lied does not get Defendant very far under a sufficiency-of-the-evidence review. See *United States v. Odicho*, 215 F. App'x 546, 549 (7th Cir. 2007) (describing the argument that defendant was entitled to a new trial because the co-operating witness's testimony "was inherently unreliable" as "patently frivolous").

13

A court "will overturn a conviction based on a credibility determination *only if* the witness' testimony was incredible *as a matter of law*." *United States v. Hayes*, 236 F.3d 891, 896 (7th Cir. 2001) (emphasis added). "That is an exacting standard," requiring proof such as "it would have impossible under the laws of nature for those events to have occurred at all." *Id.* (internal quotation marks omitted). Inconsistencies in a witness's testimony do not rise to this standard. *Id.* Here, the "lies" that Defendant identifies are all typical impeachment or conflicts in testimony (*e.g.*, how much money Defendant kept, when she and Hansen first discussed the fraud, why they used Defendant's son's bank account, who had access to which ATM cards, etc.)—which the jury heard and could weigh as part of its deliberations. Even accepting Defendant's framing, none of Hansen's alleged "lies" makes it "impossible under the laws of nature" or "physically impossible" for Defendant to have known that she was defrauding Organization A. In a trial where multiple witnesses had their credibility challenged, it is plain that these credibility questions about Hansen were firmly within the jury's province.

Second, Hansen's testimony was not the sole evidence against Defendant establishing her knowledge. Defendant herself testified and was subject to cross-examination regarding her knowledge. The jury heard about dozens of checks from Organization A that were deposited in Defendant's minor son's bank account, which was controlled by Defendant. The jury heard that Defendant handwrote certain deposit slips that were made out from Organization A to her son with the name "[Defendant's son], MD," even though there is no dispute that her seventeen-year-old son was not a doctor. The jury received text messages between Defendant and Hansen showing that once the Internal Revenue Service started investigating the payments to Defendant's son, Defendant worked with Hansen to defraud Organization A of more money to pay off the IRS. The jury heard that Defendant, in her words, "ma[d]e up a fake-email address"

14

to contact Organization A's Chief Financial Officer to ensure that money was paid to the IRS for her son. The jury also heard extensive testimony from both the Government's and Defense's summary witnesses that Defendant likely kept between $11,000 and $5,000 of Organization A's money. Defendant's motion ignores *all* of this evidence. Construing this evidence in light most favorable to the government, a rational trier of fact could have found that Defendant knowingly participated in the wire fraud scheme against Organization A and did so with intent to defraud beyond a reasonable doubt. *Weimert*, 819 F.3d at 354. Thus, Defendant has not shown that the record is devoid of evidence from which she could have been convicted, and she is not entitled to a judgment of acquittal or a new trial on this ground.

### C. Text Messages

Before the trial commenced, the parties extensively briefed the admissibility of certain text messages between Hansen and Defendant. The short version is that the Government moved *in limine* to introduce certain text messages, which were admissible non-hearsay under Federal Rule of Evidence 801(d)(2). Defendant also wanted to introduce several other text messages between the cousins, but had to overcome the obvious hearsay problems presented by a defendant admitting her own out-of-court statements for the truth of the matter asserted.

Defendant's main argument was that every text message she sent was admissible under the doctrine of completeness. To help guide the parties, the Court laid out the legal principles and illustrations that it would use to decide which text messages could be admitted under this theory. [See 109.] The parties submitted another round of briefing, as part of which the Court requested that Defendant explain if she disagreed with the Court's summary of the law, which was drawn from Seventh Circuit precedent. Defendant never stated any such disagreement. [See 120-1, at 2.] Ultimately, the Court applied the principles from its original order and ruled on each statement offered by Defendant—admitting some and excluding others. [See 120-1.]

Defendant now makes two arguments. First, she contends that some statements should have been admitted under Federal Rule of Evidence 803(3), the state of mind exception to the hearsay rule. [154, at 57–58.] Second, she contends that the "completeness doctrine is not as limited as the court ruled." *Id.* As a threshold matter, Defendant never articulates how—even if she is correct that the Court erred—these evidentiary errors warrant a new trial. See *United States v. Cueto*, 151 F.3d 620, 637–38 (7th Cir. 1998) ("A defendant is entitled to a new trial only if there is 'a reasonable possibility' that the exclusion of the evidence had 'a prejudicial effect upon the jury's verdict.'"). Defendant's failure to make such a showing is sufficient to deny her motion. Nevertheless, the Court will address the substance of her arguments.

        1.        **Federal Rule of Evidence 803(3)**

Defendant argues that the Court erred in excluding Defendant's text messages from 2012 and 2013 under the state of mind exception. Defendant was charged with three counts of wire fraud, the latest of which was in January 2010. [1, at 8.] The Court explained that the relevant state of mind for Defendant was if she acted knowingly at the time that she committed each instance of wire fraud. [120-1, at 8.] Accordingly, Defendant's "state of mind" several years after the fact was not the relevant state of mind, making Rule 803(3) inapplicable. *Id.*

Defendant now says that she "is very confused" by the Court's order because the Government alleged "ongoing concealment" in the indictment and set "no limitation on the time period of concealment," which means her state of mind at any point in the future is relevant. [154, at 57] Putting aside the fact that Defendant never made this argument in her motion *in limine* briefing [see 114, at 30–31], this argument still fails. To start, Defendant does not identify which particular text messages she contends should be admitted under Rule 803(3), which applies to a "statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily

16

health), but not including a statement of memory or belief to prove the fact remembered or believed." Most of the excluded text messages were either statements made by Hansen—whose state of mind was irrelevant—or were not about Defendant's "existing state of mind" at all. [See 154, at 54–56.] For example, how is Defendant's August 2013 statement to Hansen, "If they think I got $30,000 what did you get?!!! You're screwed." a statement of Defendant's then-existing state of mind? If anything it shows her belief that her cousin was in trouble, but statements about belief are *excluded* from Rule 803(3). But, again, Defendant did not attempt to identify (or justify) which text messages she was seeking to admit under this exception and it was her obligation to do so.

Regardless, the jury was not asked to decide whether Defendant engaged in "ongoing concealment" of her fraud from 2008 through the present. It was asked to determine Defendant's state of mind for each of the three distinct instances of wire fraud charged in the indictment, which were alleged to have occurred on or about September 25, 2009, November 10, 2009, and January 7, 2010. [See 1.] Defendant never explains how her "state of mind" in 2013 is specifically relevant to any of these three charges or can be admitted to show her knowledge years prior. Indeed, Defendant further argues that she "is offering the statements to show her state of mind in the discussions two or three years later after the scheme, but still two years prior to being charged." [154, at 58.] If these statements are "after the scheme," then they are not relevant to proof of Defendant's knowledge at the time of the scheme. See *United States v. Jackson*, 780 F.2d 1305, 1315 (7th Cir. 1986) ("We also note that the defendants' statements were made two years after the fuel-stealing scheme had ended. * * * We doubt that the defendants' state of mind in 1983 has any relevance to their state of mind two years earlier."); *United States v. Laskowski*, 2016 WL 4011230, at *4 (N.D. Ill. July 27, 2016) ("Defendant's

2010 letter to the IRS is exactly the kind of statement explicitly excepted from Rule 803(3). Defendant's 2010 letter to the IRS regarding his actions in 2008 is necessarily comprised of past-tense statements of memory. As the Court explained above, Defendant's mindset in 2008 is what matters. His written account of what that mindset was over a year later is irrelevant.").

Defendant protests that "the Court has not cited any authority preventing the defendant from admitting text messages simply because they are after the alleged time frame of the scheme." [154, at 58.] Of course, if Defendant believes that the Court erred, it was *her* burden to produce law supporting her position. She cites nothing. In any event, it is black letter law that "statements offered under Rule 803(3) must be 'contemporaneous with the * * * event sought to be proven; [therefore] it must be shown that the declarant had no chance to reflect—that is, no time to fabricate or misrepresent his thoughts.'" *United States v. Macey*, 8 F.3d 462, 467 (7th Cir. 1993) (finding statements made "four hours after the [fraudulent] invoice was executed" to be enough time to fabricate and fall outside Rule 803(3)'s contemporaneousness requirement); accord *United States v. Neely*, 980 F.2d 1074, 1083 (7th Cir. 1992) ("Two and a half weeks is more than adequate time to reflect (and perhaps fabricate) one's thoughts."); *United States v. Giles*, 67 F. Supp. 2d 947, 950 (N.D. Ill. 1999) ("Three weeks later is too late."). The Seventh Circuit has also "noted that '[t]he act of letter writing usually provides as much time as the writer might want to fabricate or misrepresent his thoughts' so the 803(3) exception generally does not apply." *Neely*, 980 F.2d at 1083. Defendant fails to articulate how any of her written text messages drafted two to three *years* "after the scheme" [154, at 58] qualify as contemporaneous with the "event sought to be proven" (her knowledge at the time of the fraud scheme in 2009 and 2010) or were made without time to reflect. See *Jackson*, 780 F.2d at 1315 ("The [Defendants], on the other hand, had two years to reflect upon their actions and potentially an incentive to

18

misrepresent the truth in their conversations with [co-Defendant]. * * * Given the absence of contemporaneousness, the potential for deliberate misrepresentation and the questionable lack of relevance of the evidence, the district court did not abuse its discretion in refusing to admit the defendants' statements [made two years after the fuel-stealing scheme had ended] pursuant to Fed. R. Evid. 803(3)."). Accordingly, the Court sees no error.

### 2. Doctrine of Completeness

Defendant believes that the Court provided an "overly-very narrow construction" of the doctrine of completeness when it declined to find that Defendant and her cousin were engaged in "one long continuous conversation" between May 2011 and September 2013. [154, at 58.] To be admitted under the doctrine of completeness, a statement needs to "explain" and "place in context" particular admitted evidence. *United States v. Reese*, 666 F.3d 1007, 1019 (7th Cir. 2012). Defendant did not make this specific showing before trial. [120-1, at 8–9.] Repeating her original argument that "all" of her texts were required to have been admitted is not persuasive.[8] [154, at 60–61.] She fails to identify any court that has allowed text messages sent sporadically over a three-year period to be admitted under the doctrine of completeness simply because a party characterizes them as "one long" conversation. The Court already explained that this is not the law [109; 120-1]. Defendant offers no reason for concluding otherwise here. Defendant's request for a new trial on the basis of the exclusion of certain text messages is denied.

---

[8] One of the text message exchanges from May 18, 2011 that Defendant argues should have admitted [154, at 60], the Court, in fact, *did* admit under the doctrine of completeness, although it left it to both parties to inform the Court whether each side wanted the entire exchange admitted. [See 120-1, at 10–11.] The Government opted to withdraw the "inculpatory" portion of the May 18 text that triggered admission of these "exculpatory" texts under the doctrine of completeness. Because the Government did not admit the "inculpatory" texts, there was nothing for "exculpatory" texts to complete.

## IV. Conclusion

For all of the reasons stated above, Defendant's request to file a longer brief [153] is granted, and her motion for acquittal and new trial [154] is denied.

Dated: May 15, 2017

Robert M. Dow, Jr.
United States District Judge